JUAN RODRÍGUEZ ETC., Plaintiff, Appellee and Appellant, v. ROBERTO CRUZ DE JESÚS, Defendant, Appellant and Appellee.

No. 9603. Argued April 2, 1948.—Decided May 17, 1948.

*Ernesto Juan Fonfrías* and *Santiago Polanco Abreu,* for defendant, appellant and appellee. *Benigno Dávila,* for plaintiff, appellee and appellant.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The District Court of San Juan rendered judgment for plaintiff in an action of filiation and support. The filiation was based, exclusively, on the fact that plaintiff's mother [1] and defendant lived in concubinage during the pregnancy and birth of the plaintiff, which fact the court found proved. The defendant alleges in this appeal, as the only errors, that the evidence does not support this conclusion. In our opinion he is correct. We shall now examine the findings of the lower court:

"That around the month of August 1944, the defendant began to court Gloria Esther Rodríguez, a minor, going out with her and taking her to the movies; that after three months of going out with her and taking her to the movies at the end of 1944 he invited her to go with him to Isla Verde; that they went to Isla Verde and there had sexual intercourse; that thereafter the girl continued having relations with the defendant in his mother's house where they had a 'bolita' business in which the minor pretended to be working for the defendant; that she had sexual intercourse two or three times a week with the defendant, in the daytime as well as at nighttime; that in April 1945 her menses ceased and she then realized that she was pregnant and told the defendant; that he then tried to make her abort by giving her abortive medicines and by medical intervention; that the minor, although pregnant, continued having carnal intercourse with the defendant; that on September 17, 1945, the Superintendent of the school where the minor was going noticed the girl's condition and called her to the office and that the minor then confessed what happened; that then the Superintendent called the girl's parents and informed them what had happened to their daugther; that the minor's father asked the defendant who admitted being the father of the child and told him that he would not refuse to acknowledge him provided no suit were brought against him because his mother was opposed to the acknowledgment; that the defendant was giving the girl certain cash allowances under the pretext that the minor was doing some work in the 'bolita' business that was being operated in the house of defendant's mother; that despite the

[1] The party appearing in this case is the mother, represented by her father, since she is a minor, but just like in *Maldonado* v. *Quetell, ante,* p. 390, the real interested party is plaintiff's son and therefore we shall consider him as such.

fact that defendant was married at the time that he had relations with Gloria Esther Rodríguez, defendant lived in his mother's house, separate from his wife, and had promised the minor that as soon as he were divorced he would set up a house for her, that the minor understood this as if he would marry her; that the boy has a strong physical resemblance to the defendant; that the defendant has an income of about one hundred dollars twice a month; but that he is married and has two daughters of the marriage."

To these findings the lower court then applies the case of *Colón* v. *Heirs of Tristani,* 44 P.R.R. 163, wherein, it says, this Court assumed an attitude that "has the necessary sociological flexibility and ambient reality not to allow that, because of a reminicent conceptualism obeying the structure of a society which no longer exists in Puerto Rico, certain men shirk their responsibility of fathers who by reason of their conjugal unhappiness or merely for sexual satisfaction, are driven to extramatrimonial relations which become more frequent everyday due to the close association afforded by feminine employment between men and women of this century."

Although the trial court itself cites the opinion rendered on reconsideration in *Colón* v. *Heirs of Tristani,* 45 P.R.R. 219, it argues that there is nothing in said opinion showing "a limitation or rectification of the principle established in the original opinion," notwithstanding the fact that in said reconsideration it was plainly stated, on page 231, that "We have not considered the relations of a man and his mistress equivalent to a concubinage." But immediately following the lower court concedes that "We must admit that the Supreme Court of Puerto Rico has assumed a position restricting the liberal rule laid down in *Colón* v. *Heirs of Tristani,* since 1933;" it cites *Ortiz* v. *Dragoni,* 59 P.R.R. 14; *Vázquez* v. *De Jesús,* 65 P.R.R. 846 and *Montañez* v. *Rodríguez,* 67 P.R.R. 198, and admits, after an analysis, that from a strict point of view of these cases "the complaint had to be dismissed."

The apparent confusion of some of the district courts as to the scope of the reasoning used in *Colón* v. *Heirs of Tristani, supra,* is due to the fact that said case included two causes of filiation: concubinage and the possession of status, while *Vázquez* v. *De Jesús* and *Montañez* v. *Rodríguez* (and the case at bar) are based exclusively on the concubinage of the parents. This is admitted by the lower court, but it maintains that since in the instant case the intimate relations between the defendant and the child's mother were proved and corroborated by other evidence of acts of the father, it is sufficient to establish the concubinage, and to that effect it expressly states in its opinion that Efraín Rodríguez is declared the "natural son of Roberto Cruz De Jesús and Gloria Esther Rodríguez, born during the concubinage of the parents." The court, therefore, did not base its judgment on a possible possession of status,[2] but strictly on concubinage. According to the findings of the court, we are of the opinion that they do not warrant the conclusion reached, neither on the ground of *Vázquez* v. *De Jesús* and *Montañez* v. *Rodríguez* nor on *Colón* v. *Heirs of Tristani, supra,* which was cited in the above mentioned cases and later confirmed in *Bianchi* v. *Heirs of Bianchi,* 67 P.R.R. 557, wherein we held that when the evidence does not show that the putative father and the mother of the alleged natural son lived together as husband and wife without being actually married, but rather that the mother was the mistress or lover of the putative father, the court commits error in holding that concubinage is established. This case was decided after taking into consideration the *Tristani* case as well as *Ortiz* v. *Dragoni, supra; Carradero* v. *Lebrón,* 58 P.R.R. 137; *Estela* v. *Heirs of Medraño,* 51 P.R.R. 531; *Góñez* v. *Palmieri,* 50 P.R.R. 439, all of which are more recent than the *Tristani* case and also *Medina* v. *Heirs of Bird,* 30 P.R.R. 151; *Gon-*

---

[2] It could not do so because there is nothing in the evidence tending to show that after the child's birth, the defendant performed any act of acknowledgment. All the facts that the court found as proved refer to acts prior to said birth. Cf. *Ortiz* v. *Dragoni* 59 P.R.R. 14, 17.

zález, etc. v. *Heirs of Sánchez*, 40 P.R.R. 146 and *Gerena* v. *Suau*, 36 P.R.R. 451, decided prior to the *Tristani* case.

The lower court, therefore, erred in declaring the plaintiff the acknowledged natural son of the defendant but not in ordering the defendant to pay him $30 monthly for support, inasmuch as according to the findings of the court the paternity was proved and the plaintiff was entitled to receive support even if he was an adulterous child. *Miranda* v. *Cacho*, 66 P.R.R. 521, *People* v. *Rodríguez*, 67 P.R.R. 688, and cases cited therein.

The judgment is reversed insofar as it declared Efraín Rodríguez the natural son of the defendant and affirmed insofar as it adjudged the defendant to pay him $30 monthly for support.

Mr. Justice De Jesús did not participate herein.